IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

|  |  |
|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY,<br><br>           Plaintiff,<br><br>   vs.<br><br>FRANK M. FERNANDEZ and JANIS H. FERNANDEZ,<br><br>           Defendants. | CIV. NO. 17-00086 DKW-RLP<br><br><br>**ORDER ADOPTING FINDINGS & RECOMMENDATION TO DENY MOTION FOR DEFAULT JUDGMENT AND TO SET ASIDE ENTRY OF DEFAULT AS TO BOTH DEFENDANTS.** |

On July 11, 2017, Magistrate Judge Richard L. Puglisi entered his Findings and Recommendation ("F&R") to deny the Motion for Entry of Default Judgment, filed by Plaintiff American Contractors Indemnity Company ("AmCon") on June 16, 2017. AmCon filed Objections to the F&R on July 18, 2017 (ECF No. 27) arguing, among other things, that default judgment against Defendants is appropriate due to their failure to timely respond to service of the pleadings and because of Frank M. Fernandez's alleged misrepresentations to the Court.

As explained below, the Court ADOPTS the F&R (ECF No. 23), DENIES AmCon's Motion for Default Judgment (ECF No. 16), and sets aside the Entry of Default (ECF No. 14) as to both defendants.

# BACKGROUND

## *Factual Background*

Plaintiff AmCon, "a licensed surety company in the State of Hawaii," seeks monetary damages and other remedies for Defendants' alleged failure to honor indemnification and guarantee provisions of three related contracts (*see* ECF Nos. 1-1, 1-2, 1-3).  Compl. ¶ 2, ECF No. 1.

In the first—a December 13, 2004 "Executing Agent's Contract" (the "2004 Contract")—AmCon authorized Defendant Frank M. Fernandez ("Frank") to serve as its "agent . . . for the soliciting and writing of Bail bonds" in the City and County of Honolulu.  *See* 2004 Contract, ECF No. 1-1.  Under the 2004 Contract, Frank was required to perform certain duties with respect to the appearance of persons bonded in court and agreed to indemnify AmCon from any and all "liability, loss, costs, damages, claims, suits, attorneys' fees, and expenses of whatever kind" arising out of bonds executed under the agreement.  *See* Compl. ¶¶ 12–15.  Defendant Janis H. Fernandez ("Janis") guaranteed Frank's obligations under the 2004 Contract, and pursuant to that guaranty, Defendants "agreed that all of their property, whether real, personal, community or mixed, shall be subject to and bound by the 2004 Contract."  Compl. ¶¶ 10–11; *see* 2004 Contract at 2.

In the second contract—an April 19, 2007 "Executing Agent's Contract" between AmCon and Janis (the "2007 Contract")—AmCon authorized Janis to

serve as its "agent" in the City and County of Honolulu "for the soliciting and writing of Bail bonds." Compl. ¶¶ 16–18; *see* 2007 Contract, ECF No. 1-2. As the 2004 Contract had required of Frank, the 2007 Contract required Janis to perform certain duties, to indemnify AmCon from certain liabilities and expenses, and to pay AmCon all sums due under the bonds subject to the agreement. *See* Compl. ¶¶ 21–24. And as Janis had done with respect to Frank's 2004 Contract, Frank executed a guaranty of Janis's obligations to AmCon in consideration of AmCon's agreement with Janis. *See* 2007 Contract at 2; Compl. ¶ 19.

AmCon, Frank, and Michael Panzo executed the third contract—a January 9, 2008 "Bail Bond Division Sub-Agents Contract" (the "2008 Contract")—"for the purpose of: constituting [Frank] as the General Agent for the writing of bail bonds in the State of Hawaii; and appointing Mr. Panzo as the Executing Agent for [AmCon] for the soliciting and writing of Bail Bonds in the State of Hawaii." Compl. ¶ 26; *see* 2008 Contract, ECF No. 1-3. On the same date, Frank executed a guaranty of Mr. Panzo's obligations to AmCon, by which he "unconditionally guaranteed and agreed to be bound to [AmCon] for the full and complete payment and performance by Mr. Panzo of all the provisions, conditions, covenants, and agreements contained in the 2008 Contract." Compl. ¶ 27.

*Procedural Background*

On February 28, 2017, AmCon filed a Complaint against Defendants for allegedly breaching the terms of the 2004 Contract, the 2007 Contract, and the 2008 Contract. Compl., ECF No. 1.

According to the Complaint, AmCon "has performed all of its obligation under the terms" of the three contracts in question. Compl. ¶ 33. AmCon also asserts that "Defendants and Mr. Panzo have written bail bonds with [AmCon] as surety" under the three contracts, and "[s]everal" of these bail bonds "have resulted in unpaid forfeitures and/or judgment." Compl. ¶¶ 34–35. Moreover, AmCon claims that "Defendants and Mr. Panzo have also issued bail bonds that were not reported" to it; and AmCon represents that although it "has made several demands to Defendants and Mr. Panzo for the indemnification of the reported bail bonds and the unpaid forfeitures and/or judgments," no payment or indemnification has been made. Compl. ¶¶ 37–39. For its grievances, AmCon requests at least $326,870.67 in damages, among other remedies. Compl. ¶ 41.

AmCon represents that upon filing the Complaint on February 28, 2017, it "caused copies of the Complaint, Summons, Notice to Parties Regarding Service Pursuant to Rule 4 of the Federal Rules of Civil Procedure, Notice of a Lawsuit and Request To Waive Service of a Summons and an (unexecuted) Waiver of the Service of Summons, together with self-addressed stamped envelopes[,] to be

mailed" to Defendants' known address. *See* Mem. in Supp. of Mot. for Default J.,

ECF No. 16-1 [hereinafter DJ Mem.]; *see also* Civil Waiver of Serv. Packet, ECF

No. 8. When an executed Waiver of Service of Summons was not returned,

AmCon "retained the services of a process server, Neal F. Yoro, to effect service"

on Defendants. DJ Mem. at 6; *see* Yoro Decl., ECF No. 22-1. AmCon's proofs of

service were filed on April 24, 2017 (ECF Nos. 11, 12) and indicate that Yoro

served Frank (personally) and Janis (through Frank) on April 1, 2017.[1]

Having failed to receive any response from Defendants within 21 days of

service, AmCon filed its "[Request] for Entry of Default Against [Defendants]"

(ECF No. 13) on May 2, 2017. *See* Fed. R. Civ. P. 12(a)(1). The Clerk of Court

---

[1] In his declaration in support of AmCon's DJ Motion, Yoro provides the following account of events at the time of service:

> 6.      On April 1, 2017 at 12:30 p.m. as I was exiting my vehicle at 1370 Pueo Street, Honolulu, HI 96816, Defendant Frank M. Fernandez who was sitting outside on a bench near his dwelling's front door reading a book became aware of my presence, stood up and began to walk quickly towards his front door leaving his phone on the bench[,] at which time I informed Defendant Frank M. Fernandez that I was serving him as well as his wife, Janis H. Fernandez through him.
>
> 7.      Defendant Frank M. Fernandez would not look at me and proceeded to enter his residence through the front door.
>
> 8.      I proceeded to knock on the door but Defendant Frank M. Fernandez would not respond. As such, I reiterated in a loud voice that I was personally serving him and Janis H. Fernandez was being served through him.

Yoro Decl. ¶¶ 6–8, ECF No. 22-1. According to AmCon, Yoro then effected service by leaving the Summons, Complaint, and other documents outside the door for Frank. Reply in Supp. of Mot. for Default J. at 2, ECF No. 22.

entered default the next day. Entry of Default, ECF No. 14. According to counsel for AmCon (Scott I. Batterman), Frank called Mr. Batterman two weeks after default was entered—on May 16—and claimed to be in the process of retaining an attorney in order to defend the action. *See* Decl. of Counsel ¶¶ 5–6, ECF No. 22-2 [hereinafter Batterman Decl.]). According to Frank and Janis, however, Frank called and spoke to Mr. Batterman in order to inform him that neither defendant had been properly served; and although Mr. Batterman stated that he would return Frank's call, he failed to do so. *See* Decl. of Frank M. Fernandez ¶¶ 3–8, 11, ECF No. 18-1 [hereinafter Frank Decl. I]; Decl. of Janis H. Fernandez ¶¶ 3–8, 11, 15, ECF No. 21-1 [hereinafter Janis Decl. I].

On June 16, 2017, AmCon filed the Motion for Entry of Default Judgment ("DJ Mot." or "DJ Motion"; ECF No. 16) against Frank and Janis and mailed hard copies of the motion to Defendants' residence. *See* Batterman Decl. ¶ 8. In the DJ Motion, AmCon asserted that Defendants "breached their obligations under the terms of the 2004 Contract, the 2007 Contract, and the 2008 Contract by failing to indemnify [AmCon] for the liabilities, costs, and expenses that [AmCon] sustained and/or incurred in connection with the bonds written by Defendants and Mr. Panzo; and by failing to honor their guarantees of such obligations." *See* DJ. Mem. at 5, ECF No. 16-1. Frank filed his Response to the DJ Motion, thereby making his first appearance in the case, on June 26, 2017 (ECF No. 18), and Janis filed her

Response to the DJ Motion on July 3, 2017 (ECF No. 21). AmCon filed its Reply in Support of the DJ Motion (ECF No. 22) on July 7, 2017.

On July 11, 2017, Magistrate Judge Puglisi entered the F&R, in which he found that "[despite] failing to timely respond to the Complaint, Defendants have indicated their clear intent to defend this case by filing Responses to [AmCon]'s [DJ] Motion[.]" F&R at 4, ECF No. 23. The Magistrate Judge therefore recommended that:

> (1) [AmCon]'s Motion for Entry of Default Judgment . . . be DENIED;
>
> (2) The entry of default against Defendants . . . be set aside; and
>
> (3) Defendants . . . be directed to file responses to the Complaint no later than 10 days after the district court acts on this Findings and Recommendation.

F&R at 5.

Before the Court are AmCon's objections to the F&R (ECF No. 27), wherein AmCon urges the Court not to exercise its discretion on behalf of Defendants and enter default judgment at this time. Obj. Mem. at 2. Defendants responded to these objections on July 27, 2017 (ECF Nos. 28 (Frank), 29 (Janis)). Accompanying those responses were Defendants' declarations, in which they informed the Court of their intent "to defend and pursue any and all claims involved in this matter" and set forth a non-exhaustive list of eight potential defenses they might raise. *See* Decl. of Frank M. Fernandez ¶¶ 3–4, ECF No. 28-1

[hereinafter Frank Decl. II]; Decl. of Janis H. Fernandez ¶¶ 3–4, ECF No. 29-1 [hereinafter Janis Decl. II].

For the reasons stated below, the Court ADOPTS the F&R, DENIES AmCon's DJ Motion, and sets aside the Entry of Default.

## STANDARD OF REVIEW

A motion for default judgment is a case-dispositive motion that requires the issuance of findings and recommendations if initially reviewed by a magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C).

When a party objects to a magistrate judge's findings or recommendation, the district court must review de novo only those portions to which the objections are made. 28 U.S.C. § 636(b)(1); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise."), *cert. denied*, 540 U.S. 900 (2003). In doing so, the district court "may accept, reject, or modify" the findings and recommendations, "in whole or in part[.]" 28 U.S.C. § 636(b)(1). Although the district court need not hold a de novo hearing, *United States v. Raddatz*, 447 U.S. 667, 673–74 (1980), it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendations to which a party objects, *United States v. Remsing*, 874 F.2d 614, 618 (9th Cir. 1989). In other words, under a de novo

standard, the court reviews "the matter anew, the same as if it had not been heard before, and as if no decision had previously been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).

"The determination as to whether a default or a default judgment shall be set aside rests in the sound discretion of the trial court." *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969) (citing *Aviation Specialties, Inc. v. Thompson*, 395 F.2d 199 (9th Cir. 1968); *McCloskey & Co. v. Eckart*, 164 F.2d 257 (5th Cir. 1947); *Ferraro v. Arthur M. Rosenberg Co.*, 156 F.2d 212 (2d Cir. 1946)); *see also Franchise Holding II, LLC v. Huntington Rest. Grps., Inc.*, 375 F.3d 922, 927 n.4 (9th Cir. 2004) (citing *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1391 (9th Cir. 1989), *as amended*), *cert. denied*, 544 U.S. 949 (2005).

## DISCUSSION

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," Rule 55(a) of the Federal Rules of Civil Procedure ("FRCP") requires the court clerk to "enter the party's default." An entry of default may be set aside "[f]or good cause shown." Fed. R. Civ. P. 55(c). In order to obtain affirmative relief from a defaulting party after the clerk has entered default, the non-defaulting party must obtain a judgment under FRCP 55(b), which itself may be set aside under FRCP 60(b). *See Eitel v. McCool*, 782

F.2d 1470, 1471 (9th Cir. 1986) (distinguishing actions to set aside the entry of default from actions to set aside default judgment); *Alaka'i Mech. Corp v. RMA Land Constr., Inc.*, 2016 WL 8710425, at *2 (D. Haw. Jan. 15, 2016) (explaining that "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment"; rather, "[t]he district court has discretion as to the determination of whether default judgment is appropriate.") (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).

Here, the Clerk of Court entered default against Defendants on May 3, 2017 (ECF No. 14), after which AmCon filed the DJ Motion (ECF No. 16). In objecting to the Magistrate Judge's recommendation that this Court deny AmCon's DJ Motion, AmCon states that Defendants "made no effort to even suggest a basis for disputing" AmCon's arguments in the DJ Motion in their purported responses to it (ECF Nos. 18, 21). Obj. Mem. at 2, ECF No. 27. This, AmCon argues, "suggests that Defendants are simply engaged in an effort to stall the proceedings." Obj. Mem. at 2. Moreover, AmCon states that "Defendants have not been forthright with the Court" regarding the facts of service, and it asserts that theirs "are not the actions of parties who should receive the benefit of the doubt from the Court in the exercise of discretion." Obj. Mem. at 2–3.[2]

---

[2]AmCon also contends that "Defendants have not been forthright with the Court" regarding their *pro se* status in this action:

Although Defendants have not formally moved to set aside the clerk's entry of default, their opposition to default judgment can be treated as such a request, to be analyzed under the "good cause" standard. *See F.D.I.C. v. Danzig*, 1993 WL 478842, at *2 (4th Cir. Nov. 22, 1993) (per curiam) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)); *Dascenzo v. Blain*, 1974 WL 168884, at *2 (E.D. Pa. Oct. 15, 1974) ("Although defendants have not moved to have the defaults set aside, the brief opposing entry of a default judgment by implication seeks such a relief."). In the context of determining whether to set aside the entry of default, "good cause" is determined by examining whether the defendant moved quickly to set aside the entry of default and whether the defendant had a meritorious defense to the action. *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994); *accord Vonderplanitz v. City of Los Angeles*, 43 Fed. Appx. 60, 61 (9th Cir. 2002) (citing *O'Connor*, *supra*); *N.Y. Life Ins. & Annuity Corp. v. Esfandiari*, 2010 WL 3584442, at *1 (D. Haw. Sept. 13, 2010) (same). Courts may also consider a defendant's culpability for the entry of default and whether the non-defaulting

---

Leaving aside that there is no basis in law for "pro se fees", what made these frivolous requests especially egregious was the effort by [Frank] to justify his request by stating that he "was a practicing attorney from 1986-1992 and 1996-2011," while neglecting to mention that he is no longer practicing because he was disbarred from the practice of law.

Obj. Mem. at 3, ECF No. 27. This argument has no bearing on the instant disposition and is not addressed further.

party will suffer prejudice if the default is set aside, among other factors.[3]  *See*

*Franchise Holding II*, 375 F.3d at 925–26.  As each of these factors is disjunctive,

the Court's determination may hinge on any one factor.  *Am. Ass'n of Naturopathic*

*Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000) (citing *In re Hammer*,

940 F.2d 524, 525–26 (9th Cir. 1991)).

Defaults are not favored by the law.  As a result, any doubt concerning entry

should be resolved in favor of setting aside a default so that the Court may rule on

the merits of the dispute.  *See In re Roxford Foods, Inc.*, 12 F.3d 875, 881 (9th Cir.

1993) (citing *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974));

*Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945–46 (9th Cir. 1986); *BDM,*

*Inc. v. Sageco, Inc.*, 549 P.2d 1147, 1150 (Hawai'i 1976) (collecting cases in

support).  Courts are particularly lenient towards defaulting parties where it is the

---

[3]"As a practical matter . . . , when considering a motion to set aside a default entry, the parallels between granting relief from a default entry and a default judgment encourage utilizing the list of grounds for relief provided in Rule 60(b) . . . , [which] are liberally interpreted when used on a motion for relief from an entry of default."  *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) (citing 10 C. Wright, A. Miller, & M. Kane, *Fed. Prac. & Proc.* § 2694 (1983) [hereinafter Wright & Miller]).  *See, e.g.*, *Franchise Holding II*, 375 F.3d at 925–26 (stating that courts determine "good cause" exists to set aside default judgments under Rule 60(b) by examining whether: (1) the defendant "engaged in culpable conduct that led to the default"; *or* (2) the defendant "had a meritorious defense"; *or* (3) "reopening the default judgment would prejudice [the plaintiff]")); *Eitel*, 782 F.2d at 1471–72 (instructing district courts to consider the following factors when determining whether to enter default judgment: (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning materials facts; (6) whether default was due to excusable neglect; and (7) the strong public policy favoring decisions on the merits.").  "The[] Rule 60(b) grounds are liberally interpreted when used on a motion for relief from an entry of default," *Stone*, 794 F.2d at 513 (citing Wright & Miller, *supra*, § 2694), as is the case here.

entry of default rather than a default judgment that is being set aside. *Robinson v. Tripler Army Med. Ctr.*, 2009 WL 688922, at *5 (9th Cir. Mar. 17, 2009) (citing *O'Connor*, 27 F.3d at 364); *Mendoza*, 783 F.2d at 945 (citing *Meehan*, 652 F.2d at 276).

The "good cause" standard has been met in this case because Defendants did not unreasonably delay their opposition to the entry of default; they have raised potentially meritorious defenses; and AmCon will not be prejudiced by the delay.

## A. Time of Motion

Motions to set aside entry of default are governed by FRCP 55(c), which, unlike Rule 60(b), does not specify a time within which such a motion must be filed. Courts nonetheless require that a motion to set aside entry of default be made within a "reasonable time" or with "reasonable promptness" upon discovery of the default. *See* Wright & Miller, § 2698 (4th ed. 2017); *e.g.*, *Johnson v. Barlow*, 2007 WL 214603, at *3 (E.D. Cal. Jan. 25, 2007) ("[T]he fact that the defaulted party acted quickly to cure the default and seek relief is a strong reason for the court to exercise its discretion to set aside the default." (citation omitted)). To make this determination, courts look either to the date of the entry of default or to the date on which the defendant discovered his or her default. *See Seanor v. Bair Transp. Co. of Del.*, 54 F.R.D. 35, 36 (E.D. Pa. 1971) (citing *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th

13

Cir. 1967)).  Generally, motions to set aside default filed within a few months are

reasonable,[4] but a delay of many months or years is not.[5]

In this case, Defendants knew that default had been entered within two

weeks.  Indeed, the clerk entered default against Defendants (ECF No. 14) on May

3, 2017, and the record demonstrates that by May 16, 2017, Frank had contacted

plaintiff's counsel regarding the suit.  *See* Batterman Decl. at ¶¶ 5–6.

Frank and Janis opposed AmCon's DJ Motion—thereby implicitly moving

to set aside the entry of default—in memoranda they filed on June 26 (ECF No.

18) and July 3 (ECF No. 21), respectively.  *See Danzig*, 1993 WL 478842, at *2

(citing *Meehan*, 652 F.2d at 276); *Dascenzo*, 1974 WL 168884, at *2.  Thus, both

defendants waited less than two months from discovering that default was entered

(on May 16, 2017, at the latest) before implicitly asking the court to vacate the

entry (on June 26 and July 3, 2017).

---

[4]*See, e.g.*, *Reynal v. United States*, 153 F.2d 929, 931–32 (5th Cir. 1945) (finding thirty-day delay to be reasonable); *Edes v. Fredson*, 344 F. Supp. 2d 209, 209, 212–13 (D. Me. 2004) (stating that defendant acted promptly by moving to set aside the entry of default sixteen days after plaintiff filed the request for default).  *But cf.*, *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 899 F.2d 109 (1st Cir. 1990) (holding unreasonable the three and one-half month delay in asking for relief where default judgment was the product of defendant's negligence "coming perilously close" to willfulness).

[5]*See, e.g.*, *Atlanta Gas Light Co. v. Semaphore Advertising, Inc.*, 747 F. Supp. 715, 718 (S.D. Ga. 1990) (finding untimely the motion to set aside default filed over ten months after default was entered where defendant learned of entry within one week); *Green v. Warren*, 2003 WL 23329263, at *3 (E.D. Va. Apr. 24) (holding delay unreasonable where "Rule 60(b) motion was filed within one year of the default judgment . . . [and] almost sixteen months after the entry of default"), *aff'd* 69 Fed. Appx. 642 (4th Cir. 2003) (per curiam).

In light of the especially lenient "good cause" standard for setting aside entry of default and the strong judicial preference for adjudication on the merits, *see O'Connor*, 27 F.3d at 364; *In re Roxford Foods*, 12 F.3d at 881; *Mendoza*, 783 F.2d at 945, this less-than-two-month delay was reasonably prompt. This factor therefore weighs in favor of setting aside the entry of default.

### B. Meritorious Defense

As a prerequisite to vacating an entry of default, a defaulting party is required to make "some showing of a meritorious defense." *Stone*, 794 F.2d at 513 (citing Wright & Miller, § 2697 (Supp. 1986); *Medunic v. Lederer*, 533 F.2d 891, 893 (3d Cir. 1976)). Generally, "[t]o establish a meritorious defense, the defendant must 'state a defense good at law which is sufficient if it contains even a hint of a suggestion which, proven at trial, would constitute a complete defense.'" *Am. Exp. Travel Related Servs. Co. v. Tangredi*, 2010 WL 1426915, at *6 (M.D. Tenn. Apr. 8, 2010) (citing *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996)); *accord Girafa.com, Inc. v. Smartdevil Inc.*, 728 F. Supp. 2d 537, 545 (D. Del. 2010); *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 56 (E.D.N.Y. 2008); *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 718 (D. Md. 2001) (citing *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994)). This is because the underlying concern in determining whether to set aside default "is to determine whether there is some possibility that the outcome of the suit after a full

trial will be contrary to the result achieved by the default." *Stone*, 794 F.2d at 513

(citing Wright & Miller, § 2697 (Supp. 1986)); *cf., e.g.*, *Brady v. United States*,

211 F.3d 499, 504 (9th Cir. 2000) (affirming the district court's decision to set

aside the entry of default notwithstanding plaintiff's argument that defendant was

untimely in both responding to the complaint and in moving to set aside the

default).

Although courts generally require the defaulting party to present some

factual basis for any allegedly meritorious defense, "[t]he demonstration of a

meritorious defense is not expressly called for by the federal rules and, therefore,

the nature and extent of the showing that will be necessary is a matter that lies

within the court's discretion." Wright & Miller, § 2697 (citing *Bank of Southside*

*Va. v. Host & Cook, LLC*, 239 F.R.D. 441, 445 (E.D. Va. 2007); *Widmer-Baum v.*

*Chandler-Halford*, 162 F.R.D. 545, 557 (N.D. Iowa 1995)). Indeed, the Ninth

Circuit has held that a meritorious defense was present where a defendant merely

"alleged various defenses based on the contract" during the hearing on the motion

to set aside the default judgment. *Price v. Seydel*, 961 F.2d 1470, 1473 (9th Cir.

1992); *see also Botts v. Kompany.com*, 2010 WL 11465403, at *3 (C.D. Cal. July

12, 2010) (citing *Price*, *supra*). Courts have also found that meritorious defenses

may exist when the defendant only disputes the *amount* of the default entered,

rather than the propriety of the claim. *See Wainwright's Vacations*, 130 F. Supp. 2d at 719 (citing *Agusta v. Fiberglass*, 843 F.2d 808, 812 (4th Cir. 1988)).

Although they have not yet filed any Answer or Proposed Answer to AmCon's Complaint, Defendants have, in response to AmCon's objections to the F&R, declared their "inten[t] to defend and pursue and any all claims involved in this matter." Frank Decl. II at ¶ 3, ECF No. 28-1; Janis Decl. II at ¶ 3, ECF No. 29-1. In response to AmCon's DJ Motion, Frank and Janis also filed declarations claiming that service was never properly effected on Frank, and that Frank never received any Complaint to be delivered to Janis. Frank Decl. I at ¶¶ 3–4, ECF No. 18-1; Janis Decl. I at ¶¶ 3–4, 14–15, ECF No. 21-1.[6] Moreover, in opposing AmCon's objections, Defendants each set forth the following non-exhaustive list of defenses/counter claims:

> (1) Failure to Mitigate[;]
>
> (2) Negligence in regards to failure to train [Defendants;]
>
> (3) Negligence in not informing [Defendants] of the (60) day deadline to pay all bail forfeitures[;]
>
> (4) Failure to monitor bail forfeitures for 12 years resulting in good forfeitures[;]

---

[6]In responding to AmCon's DJ Motion, Defendants each contested Yoro's statement that service was made; they each stated that Frank had made a phone call to AmCon's attorney, Mr. Batterman, "in order to inform him of the fact that [Frank] was <u>not</u> served with a copy of the Complaint either for himself or for Defendant Janis H Fernandez," but that Mr. Batterman had failed to return the call[.]" Frank Decl. I at ¶¶ 6, 8, 11–13; Janis Decl. I at ¶¶ 6, 8, 10–11, 16–17.

(5) Payment of $300,000 in bail premiums that should result in coverage for all of the forfeitures involved this matter;

(6) Bad Faith denial of coverage in not paying for said Bail Forfeitures, since $300,000 were paid in premiums;

(7) Unconsciousability [sic] of any and all contract with [AmCon] since Premiums were paid with No Benefit to [either Defendant]; [and]

(8) Illegal contract in violation Insurance and Contractual laws[.]

Frank Decl. II at ¶¶ 3–4 (formatting altered); *accord* Janis Decl. II at ¶¶ 3–4.

Although Defendants offer no additional facts in support of these alleged defenses, they have raised the possibility that their contracts with AmCon were invalid. *See Botts*, 2010 WL 11465403, at *3 (holding that defaulting party who, in a proposed answer, asserted thirteen affirmative defenses and "br[ought] several specific arguments in favor of his position, denying that the Agreement was ever a binding contract between the parties," asserted a meritorious defense (citing *Price*, 961 F.2d at 1473)). Defendants also appear to contest the amount of damages that AmCon now seeks to recover through default judgment, notwithstanding any challenge to the merits of the underlying dispute. *See, e.g.*, *Agusta*, 843 F.2d at 812 (finding that statements in defendants' affidavits established a meritorious defense although they "addressed the amount, rather than the propriety, of [the plaintiff]'s claim"). Thus, Defendants have offered at least plausible theories of defense that, if established at trial, could completely bar AmCon's recovery. *See*

*generally Valvanis v. Milgroom*, 2008 WL 2150952, at *5 (D. Haw. May 20, 2008) (explaining that the issues of whether the plaintiff made out a prima facie case against defendants and/or whether defendants have any *valid* defenses is not an issue for default judgment, "but rather summary judgment and/or trial").

Accordingly, the meritorious defense inquiry weighs in favor of setting aside the entry of default.

## C.    Additional Factors

Courts considering whether to set aside an entry of default may also examine whether the non-defaulting party will be prejudiced by reopening the suit and whether the default was the result of culpable behavior by the defendant.  *See, e.g.*, *Franchise Holding II*, 375 F.3d at 925 (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696, 701 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001)); *see also Am. Ass'n of Naturopathic Physicians*, 227 F.3d at 1108 (citing *In re Hammer*, 940 F.2d at 525–26); *Cty. of Hawai'i v. Ala Loop Homeowners*, 235 P.3d 1103(Hawai'i 2010) (citing *Rearden Fam. Trust v. Wisenbaker*, 65 P.3d 1029, 1046 (Hawai'i 2003)).  "[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment."  *TCI Grp.*, 244 F.3d at 701 ("[T]he standard is whether [plaintiff's] ability to pursue his claim will be hindered.") (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).  A court determines whether conduct is

culpable by looking at the totality of the circumstances and whether the conduct

was "willful, deliberate, or evidence of bad faith." *TCI Grp.*, 244 F.3d at 697

(quoting *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)).

Conduct is not culpable if a reasonable, good faith explanation is given, so "under

the proper circumstances," culpable conduct "can be excused even in the event that

[Defendants] received the [Complaint], understood its consequences, and

intentionally failed to answer." *Botts*, 2010 WL 11465403, at *2 (citing *TCI Grp.*,

244 F.3d at 697; *Empl. Painters Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 1000

(9th Cir. 2007)).

AmCon has not argued that it will be prejudiced by allowing the suit to

proceed on the merits. Rather, it focuses on highlighting alleged inaccuracies in

Defendants' statements to the Court and cites authority stating that, "[w]here a

defendant attempts to avoid service by refusing to take the papers, it is sufficient if

the server is in close proximity to the defendant, clearly communicates intent to

serve court documents, and makes reasonable efforts to leave the papers with the

defendant." Reply in Supp. of DJ Mot. at 2–3 (quoting *Song v. KBOS, Inc.*, 2015

WL 5162556, at *4 n.5 (D. Haw. Aug. 31, 2015)). Frank's May 16, 2017 phone

call to Mr. Batterman indicates that, at the very least, Defendants had constructive

notice of the action. *See* Batterman Decl. at ¶¶ 5–6; Frank Decl. I at ¶ 6–8, 11;

Janis Decl. I at ¶ 6–8, 11. AmCon therefore argues that "[i]t is clear that

Defendants' efforts have been directed, not toward contesting this action on the merits, but towards evading service."  Obj. Mem. at 3, ECF No. 27.

Even if the Court were to treat AmCon's assertion as true, the Court has discretion to set aside the entry of default and direct Defendants to file an Answer to AmCon's Complaint.  *E.g.*, *Haskins v. U.S. One Transp., LLC*, 755 F. Supp. 2d 126, 130–31 (D.D.C. 2010) (finding "good cause" for setting aside the entry of default where, although the company owner-defendant initially may have willfully failed to respond to the complaint, she subsequently asserted a meritorious defense, and the employee would not have been prejudiced by vacating the entry of default); *cf. Johnson*, 2007 WL 214603, at *3 ("Put simply, if good reason exists to set aside the default, the court should find good cause for doing so.").  The Court agrees with the Magistrate Judge that "Defendants have indicated their clear intent to defend this case by filing Responses" to AmCon's DJ Motion and now having filed additional responses to AmCon's Objections.  *See* F&R at 4.  In those responses, Defendants appear to contest the circumstances of service and assert defenses that they intend to pursue through trial.  Based on its own review of the facts and law, and in light of the strong judicial preference for resolution on the merits, *see In re Roxford Foods*, 12 F.3d at 881; *Mendoza*, 783 F.2d at 945, the Court therefore holds that Defendants have sufficiently satisfied the conditions necessary to set aside entry of default.

## CONCLUSION

The Court hereby ADOPTS the F&R (ECF No. 23), OVERRULES AmCon's related objections, DENIES AmCon's DJ Motion (ECF No. 16), and sets aside the Entry of Default (ECF No. 14) as to both Defendants.  Defendants are instructed to file their Answers to the Complaint within ten days of this Order.

IT IS SO ORDERED.

DATED:  September 21, 2017 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

Am. Contractors Indemnity Co. v. Fernandez & Fernandez; CV 17-00086 DKW-RLP; ORDER ADOPTING FINDINGS & RECOMMENDATION TO DENY MOTION FOR DEFAULT JUDGMENT AND TO SET ASIDE ENTRY OF DEFAULT AS TO BOTH DEFENDANTS

22